UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

| | |
|---|---|
| SARAH PERRON | CIVIL ACTION |
| VERSUS | |
| JEFF TRAVIS, ET AL. | NO. 20-00221-BAJ-EWD |

### ORDER

Before the Court are Motions to Dismiss filed by Defendants Jeff Travis, Cullen J. Wilson, Lori Bell, the Board of Aldermen, the Town of Clinton, and Richard C. Baudoin ("Defendants"). (Docs. 28, 29, 35). All the Motions are opposed. (Docs. 32, 34, 41). For reasons to follow, it is ordered that the Motions are DENIED in part and GRANTED in part.

I. BACKGROUND

  A. Facts

For present purposes, the following facts are accepted as true:

On April 12, 2019, Decedent, Myron Rayshon Flowers, requested a ride to a store with an acquaintance, Kyle A. Bryant. (Doc. 1, p. 5). As Bryant drove to the store, he passed Defendant Cullen J. Wilson, a deputy sheriff in the East Feliciana Parish Sheriff's Office ("EFPSO"). (*Id.*). Deputy Wilson made a U-turn and immediately stopped Bryant's vehicle. (*Id.*). Bryant pulled into the parking lot of RKM Primary Care Medical Complex. (*Id.*). Deputy Wilson ordered Bryant to step to the back of the vehicle. (*Id.*). Bryant complied and was subsequently interrogated and patted down. (*Id.*).

1

Defendant Richard C. Baudoin, an officer of the Town of Clinton Police Department, was nearby and was completing an unrelated vehicle stop. (*Id.*). After Officer Baudoin completed the encounter, he proceeded to Deputy Wilson's location to assist. (*Id.*). Deputy Wilson asked Officer Baudoin to keep Bryant secured while he conducted a vehicle search. (*Id.*). Officer Baudoin began to interrogate Bryant behind the vehicle, while Deputy Wilson searched the car. (*Id.*). During the search, Deputy Wilson, for the first time, noticed Decedent in the back seat of the vehicle. (*Id.*). Surprised, Deputy Wilson immediately exited the vehicle, opened the back door, grabbed Decedent's arm, and ordered him to exit the vehicle. (Doc. 1, p. 5–6). As Decedent began to exit the vehicle, with both his hands in the air, Deputy Wilson fired four shots at him. (Doc. 1, p. 6). Officer Baudoin ran towards the shooting and fired two additional shots at Decedent, causing him to fall to the ground. (*Id.*). Decedent died at the scene. (*Id.*).

After Emergency Medical Services arrived, EMT Bratt Lewis removed a handgun from the Decedent's pocket and placed it on the ground. (*Id.*).

**B. Procedural History**

On April 9, 2020, Plaintiff Sarah Perron, on behalf of her minor child MFJ, filed the instant wrongful death and survival action under 42 U.S.C. § 1983 against Sheriff Jeff Travis and Deputy Wilson of the EFPSO, Officer Baudoin of the Town of Clinton Police Department, as well as the Town of Clinton, the Board of Aldermen of the Town of Clinton, and the former Mayor of the Town of Clinton, Lori Ann Bell. (Doc. 1, p. 3–4). Plaintiff also asserts that Defendants violated Decedent's right to be free from excessive force under the Louisiana Constitution. (Doc. 1, p. 11). Plaintiff

additionally asserts claims of assault, battery, and negligence under Louisiana state law. (Doc. 1, p. 12).

All six Defendants filed Motions to Dismiss asserting that the action should be dismissed under Federal Rule of Civil Procedure ("Rule") 12(b)(7) for failure to join a necessary party, specifically, Decedent's second minor child. *See* (Doc. 28, p. 4–7).[1] In the alternative, Defendants assert that Plaintiff has failed to state any actionable claim. *See* Docs. 28, 29, 35.

## II. LEGAL STANDARD

### A. Failure to Join a Necessary Party under Fed. R. Civ. P. 12(b)(7) and Fed. R. Civ. P. 19

Federal Rule of Civil Procedure ("Rule") 12(b)(7) permits dismissal of an action for "failure to join a party under Rule 19", with Rule 19 detailing the requirements for required-party joinder. Rule 19 requires "a highly-practical, fact-based . . . two-step inquiry." *Hood ex rel. Miss. v. City of Memphis, Tenn.*, 570 F.3d 625, 628 (5th Cir. 2009). First, the court "must determine whether the party should be added under the requirements of Rule 19(a)." *Id.* Rule 19(a)(1) provides, in relevant part:

> A person who is subject to service of process and whose joinder will not deprive the court of subject-matter jurisdiction must be joined as a party if:
>     (A) in that person's absence, the court cannot accord complete relief among existing parties; or
>         (B) that person claims an interest relating to the subject of the action and is so situated that disposing of the action in the person's absence may:
>             (i) as a practical matter impair or impede the person's ability to protect the interest; or

---

[1] Defendants Baudoin, the Town Board of Aldermen, the Town of Clinton, and Lori Bell have adopted the law and arguments made by Defendants Wilson and Travis in their Motion to Dismiss. (Doc. 35-1, p. 11); (Doc. 29, p. 19)

3

>>(ii) leave an existing party subject to a substantial risk of incurring double, multiple, or otherwise inconsistent obligations because of the interest.

FED. R. CIV. P. 19(a)(1).

Once it is determined that a party should be added under the requirements of Rule 19(a), the court must then determine "whether litigation can be properly pursued without the absent party." *Hood*, 570 F.3d at 629 (citations omitted). Rule 19(b) calls upon the court to consider the following factors in making such a determination:

> (1) the extent to which a judgment rendered in the person's absence might prejudice that person or the existing parties;
> (2) the extent to which any prejudice could be lessened or avoided by:
>   (A) protective provisions in the judgment;
>   (B) shaping the relief; or
>   (C) other measures;
> (3) whether a judgment rendered in the person's absence would be adequate; and
> (4) whether the plaintiff would have an adequate remedy if the action were dismissed for nonjoinder.

FED. R. CIV. P. 19(b).

### B. Failure to State a Claim Upon Which Relief Can Be Granted under Fed. R. Civ. P. 12(b)(6)

A Rule 12(b)(6) motion to dismiss tests the sufficiency of the complaint against the legal standard set forth in Rule 8, which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." FED. R. CIV. P. 8(a)(2). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v.*

4

*Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).[2]

"Determining whether a complaint states a plausible claim for relief [is] . . . a context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. "[F]acial plausibility" exists "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* at 678 (citing *Twombly*, 550 U.S. at 556). Hence, the complaint need not set out "detailed factual allegations," but something "more than labels and conclusions, and a formulaic recitation of the elements of a cause of action" is required. *Twombly*, 550 U.S. at 555. When conducting its inquiry, the Court must "accept[] all well-pleaded facts as true and view[] those facts in the light most favorable to the plaintiff." *Bustos v. Martini Club Inc.*, 599 F.3d 458, 461 (5th Cir. 2010) (quotation marks omitted).

### III. ANALYSIS

#### A. Failure to Join a Necessary Party

Because the failure to join a necessary party implicates the jurisdiction of the Court, the Court shall dispose of this matter first.

---

[2] Plaintiff claims that the Supreme Court has "expressly prohibited the application of a heightened pleading standard to Section 1983 claims against municipalities," and asserts that "[b]oilerplate allegations of inadequate municipal policies or customs are generally sufficient." (Doc. 34, p. 12), However, the United States Court of Appeals for the Fifth Circuit has made it clear that, despite the proclamation in *Leatherman v. Tarrant County Narcotics Intelligence & Coordination Unit*, 507 U.S. 163 (1993), the ordinary *Twombly* pleading standard applies to such claims, and that *Leatherman* did not require courts to accept "generic or boilerplate pleadings in this case or in any other context." *Ratliff v. Aransas County, Texas*, 948 F.3d 281, 284 (5th Cir. 2020).

5

In support of their position, Defendants present Decedent's obituary, published in The Advocate, the Baton Rouge daily newspaper. (Doc. 28-2, p. 1). Relevantly, it notes that Decedent was survived by one son, MFJ, and one daughter, SG. (*Id.*). Defendants assert that, because Decedent had two minor children, the second child must be joined in the action for the matter to proceed. (Doc. 28-1, p. 7).

Plaintiff provides two counterarguments. First, that Defendants have provided no credible evidence that Defendant had another minor child. (Doc. 41, p. 10). Plaintiff notes that the child "does not have the last name of the decedent" and therefore disputes paternity. (Doc. 41, p. 10). Second, that she is not required to, nor is she able to, join the other child in the suit. (Doc. 31-2, p. 4; Doc. 34, p. 15; Doc. 41, p. 10).

Even assuming that the second child is a necessary party with standing to file suit[3], the action will not be dismissed for nonjoinder because this litigation can properly proceed without her. Notably, Plaintiff does not have an adequate remedy if this action were dismissed for nonjoinder, as there is no Louisiana state court suit pending, and the prescriptive period has run or nearly run on all claims. While Defendants indicate that they might be prejudiced by multiple judgments, (Doc. 28-1,

---

[3] Under Louisiana law, biological paternity alone is not sufficient to establish standing to bring a wrongful death suit. *See, e.g. Prudhomme on behalf of Reed v. Russell*, 802 Fed. Appx. 817 (5th Cir. 2020). While all children have the right to bring either a wrongful death or survival action, Louisiana law requires that an illegitimate child establish paternity by clear and convincing evidence to commence a wrongful death suit. *See, e.g. Washington v. Magnolia Manor Nursing Home & Rehabilitation, L.L.C.*, 51,899, p. 4–5, (La. App. 2 Cir. 3/28/18); 247 So.3d 156, 159 (citing LA. CIV. CODE ANN. art. 197). It is not clear, based on an initial appraisal of the evidence presented to the Court, that Decedent's second child has standing to bring a claim under Louisiana law.

p. 7), the prescriptive period has expired for the second child to bring suit and no party asserts that a duplicate suit has been filed.[4] Therefore, the threat of duplicative or inconsistent obligations is implausible.

As such, Defendants' Motion under Rule 12(b)(7) is denied.

## B. Failure to State a Claim

In the alternative, for a variety of reasons, Defendants contend that Plaintiff fails to state any actionable claims. The Court shall address Defendants' various arguments in turn.

### i. Plaintiff's Official Capacity Claims against Defendants Cullen Wilson, Lori Bell, the "Town Board of Aldermen", and Richard Baudoin

Defendants assert that Plaintiff's municipal capacity claims against the "Town Board of Aldermen" of the Town of Clinton, Cullen Wilson, Lori Bell, and Richard Baudoin in their official capacities are legally redundant insofar as multiple Defendants currently represent the same entities. (Doc. 28-1, p. 12–13); (Doc. 29-1, p. 8–9); (Doc. 35-1, p. 3). The Court agrees. Therefore, to avoid overlapping parties, only the official capacity claims against Sheriff Jeff Travis and the Town of Clinton shall remain. *See Kentucky v. Graham*, 473 U.S. 159, 165 (1985) (claims against persons in their official capacities are treated as municipal liability claims against

---

[4] "Civil rights claims brought under 42 U.S.C. § 1983 are governed by the forum state's statute of limitations for torts claims." *Clyce v. Butler*, 876 F.3d 145, 148 (5th Cir. 2017). The prescriptive period for nearly all tort actions is one year in Louisiana. *See* LA. CIV. CODE ANN. art. 3492. This prescriptive period runs against minors. *See Gauthreaux v. Rheem Mfg. Co.*, 588 So.2d 723 (La. Ct. App. 5 Cir. 1991), writ denied, 592 So.2d 409 (La. 1992).

the entity (citing *Monell v. New York City Dept. of Social Services*, 436 U.S. 658, 690 (1978)).

### ii. Punitive Damages

Deputy Wilson and Sheriff Travis argue that Plaintiff is precluded from recovering punitive damages against governments, political subdivisions, or persons sued in their official capacities. (Doc. 28-1, p. 8). The United States Supreme Court has long held that punitive damages cannot be awarded against a municipality. *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981). Thus, any claims seeking to recover punitive damages against any entity or individual who is being sued in its official capacity must be stricken from the pleadings as a matter of law.

However, the Supreme Court has recognized that punitive damages are recoverable against municipal employees when sued in their individual capacities pursuant to a § 1983 claim. *See Smith v. Wage*, 461 U.S. 30, 35 (1983). Therefore, Plaintiff may proceed with a claim for punitive damages against Deputy Wilson and Officer Baudoin.

### iii. Plaintiff's Federal Claims Against Deputy Wilson and Officer Baudoin

Deputy Wilson and Officer Baudoin both argue that claims against them in their individual capacities must be dismissed, as they are entitled to qualified immunity. (Doc. 28-1, p. 13); (Doc. 35, p. 4).

#### a. Qualified Immunity

"The doctrine of qualified immunity protects government officials 'from liability for civil damages insofar as their conduct does not violate clearly established

8

statutory or constitutional rights of which a reasonable person would have known.'" *Terry v. Hubert*, 609 F.3d 757, 761 (5th Cir. 2010) (quoting *Pearson v. Callahan*, 555 U.S. 223 (2009)). A public official is entitled to qualified immunity unless the plaintiff demonstrates that (1) the defendant violated the plaintiff's constitutional rights, and (2) the defendant's actions were objectively unreasonable in light of clearly established law at the time of the violation. *Porter v. Epps*, 659 F.3d 440, 445 (5th Cir. 2011) (citing *Freeman v. Gore*, 483 F.3d 404, 410–11 (5th Cir. 2007)). The Supreme Court has held that courts have the discretion to determine which prong of qualified immunity should be analyzed first. *Pearson*, 555 U.S. at 236.

The Fifth Circuit has established some of the most stringent pleading requirements on a Motion to Dismiss under Rule 12(b)(6) in qualified immunity cases. "[A] plaintiff seeking to overcome qualified immunity must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a qualified immunity defense with equal specificity." *Backe v. LeBlanc*, 691 F.3d 645 (5th Cir. 2012) (citations omitted).

The failure to provide these specific facts warrants dismissal under Rule 12(b)(6).

### b. Whether Deputy Wilson and Officer Baudoin Violated Decedent's Constitutional Rights

It is a violation of the Fourth Amendment for an officer to use excessive or unreasonable force in the context of an arrest. See *Graham v. Connor*, 490 U.S. 386, 394 (1989). To prevail on an excessive force claim, "[a] plaintiff must show (1) an injury, (2) which resulted directly and only from the use of force that was clearly

9

excessive, and (3) the excessiveness. . . was clearly unreasonable." *Collie v. Barron*, 747 Fed. Appx. 950, 952 (5th Cir. 2018) (citations omitted). Unreasonableness and excessiveness are viewed "from the perspective of a reasonable officer on the scene, rather than with the 20/20 vision of hindsight." *Graham*, 490 U.S. at 396 (citing *Terry v. Ohio*, 392 U.S. 1, 20–22 (1968)).

Decedent died as a result of six gunshots, four by Deputy Wilson and two by Officer Baudoin. Accepting Plaintiff's allegations as true, the officers' force was clearly excessive. "It is objectively unreasonable to use deadly force 'unless it is necessary to prevent [a suspect's] escape and the officer has probable cause to believe that the suspect poses a significant threat of death or serious physical injury to the officer or others.'" *Flores v. City of Palacios*, 381 F.3d 391, 399 (5th Cir. 2004) (citing *Tennessee v. Garner*, 471 U.S. 1, 3 (1985)). Here, Deputy Wilson ordered Decedent to exit the vehicle, and subsequently shot him four times while he was complying with his hands in the air. (Doc. 1, p. 6). Officer Baudoin fired two more shots, causing Decedent to fall to the ground. (*Id.*). A weapon was ultimately recovered from Decedent's person after the shooting, but Plaintiff's allegations indicate that the officers were not aware of the gun until after they shot the Decedent. (Doc. 1, p. 6).

As alleged, and Defendants have not disputed that, Decedent did not pose a threat of death or serious bodily injury to anyone. For present purposes, Plaintiff has stated an actionable claim of excessive force.

### c. Whether Baudoin or Wilson Violated a Clearly Established Right

The Court now turns to the second prong of the qualified immunity analysis—whether the right was clearly established prior to the incident giving rise to the suit. In the Fourth Amendment context, courts must determine whether an officer's conduct violated clearly established law in light of the facts and context of the specific circumstance that the officer confronted. *See Mullenix v. Luna*, 577 U.S. 7 (2015).

The conduct at issue here falls into a circumstance where the violation was so obvious so as to violate clearly established law, "even without a body of relevant case law." *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004). While the Fifth Circuit has noted that "[t]he standard for obviousness is sky high," this case meets it. *Joseph on behalf of Est. of Joseph v. Bartlett*, 981 F.3d 319, 337 (5th Cir. 2020). Fourth Amendment seizures, including the use of excessive force, are subject to a balancing test, weighing individual intrusion against legitimate government interests. *Keller v. Fleming*, 952 F.3d 216, 225 (5th Cir. 2020). The balance of interests here clearly favors Decedent. The Decedent was not an obvious threat. He was sitting, quietly, in the back of a car until ordered to do otherwise. (Doc. 1, p. 6). When Decedent attempted to comply with the officer's orders to exit the vehicle with his hands raised, he was shot four times by Deputy Wilson, then two more times by Officer Baudoin. (*Id.*).

Deputy Wilson and Officer Baudoin were on notice that shooting a presumptively unarmed citizen who is not resisting or threatening an officer, during a traffic stop, is unlawful. *See Joseph*, 981 F.3d at 338 (noting that "*Tennessee v.*

11

*Garner* prohibits the use of deadly force without an immediate threat and without warning when one is feasible."). As such, they are not entitled to qualified immunity.

### iv. Plaintiff's *Monell* Municipal Liability Claims against Defendant Travis and the Town of Clinton

#### a. Policy Liability

Sheriff Travis and the Town of Clinton assert that Plaintiff has failed to state a § 1983 claim against them because Plaintiff has not pointed to an official policy or custom that motivated the alleged violation of Decedent's constitutional rights. (Doc. 28-1, p. 8); Doc. 29-1, p. 10).

To defeat a Motion to Dismiss under Rule 12(b)(6) here, Plaintiff "must show that (1) an official policy (2) promulgated by the municipal policymaker (3) was the moving force behind the violation of a constitutional right." *Peña v. City of Rio Grande City*, 879 F.3d 613, 621 (5th Cir. 2018) (citations omitted). In the absence of an official policy, a plaintiff may also allege that:

> a persistent, widespread practice of city officials or employees which although not authorized by officially adopted and promulgated policy, is so common and well settled as to constitute a custom that fairly represents municipal policy. Actual or constructive knowledge of such custom must be attributable to the governing body of the municipality or to an official to whom that body had delegated policy-making authority.

*Bennett v. City of Slidell*, 735 F.2d 861 (5th Cir. 1984) (per curium).

The Fifth Circuit is clear that "[t]o proceed beyond the pleading stage, a complaint's 'description of a policy or custom and its relationship to the underlying constitutional violation . . . cannot be conclusory; it must contain specific facts.'" *Peña*, 879 F.3d at 622 (citing *Spiller v. City of Tex. City, Police Dep't*,

12

130 F.3d 162, 167 (5th Cir. 1997)). A general allegation of a policy is not sufficient. *See Spiller*, 130 F.3d at 167 (rejecting as vague and conclusory a claim by plaintiff that her arrest without probable cause stemmed from the police department's general policy of disregarding the rights of African-American citizens). Nor is mere "speculation that any particular policymaker . . . knew about the alleged custom." *Peña*, 879 F.3d at 623.

Plaintiff asserts that the EFPSO and the Town of Clinton promulgated the following unconstitutional policies and customs:

(a) Subjecting people to unreasonable use of force against their persons

(b) Failing to properly hire [and] supervise [] [] their officers

(c) Failing to follow appropriate policies and procedures to address and correct repeatedly [sic] use of excess force

(d) Failing to follow appropriate policies and procedures of their office

(e) . . .

(f) Selecting, retaining, and assigning employees with demonstrable propensities for excess force, violence, negligence and other misconduct

(g) Condoning and encouraging officers in the belief that they can violate the rights of persons such as the decedent in this action with impunity, and that such conduct will not adversely affect their opportunities for promotion and other employment benefits.

(Doc. 1, p. 7–8).

Plaintiff fails to sufficiently plead facts that support these allegations. Because Plaintiff does not rely on an official policy by the Town of Clinton or EFPSO, she must demonstrate that there was a "persistent and widespread" practice that practically had the force of law, of which the Town of Clinton and EFPSO had knowledge.

However, to plausibly plead such a practice, "a plaintiff must do more than describe the incident that gave rise to his injury." *Peña*, 879 F.3d at 622. For these claims, Plaintiff has failed to plead any supporting facts outside of the night of Decedent's death. Therefore, Defendants' Motion to Dismiss is granted, without prejudice, with respect to the above claims.

### b. Failure to Train Liability

Plaintiff also alleges that EFPSO and the Town of Clinton failed to train officers to prevent excessive force. (Doc. 1, p. 7). To prevail on a failure to train theory of municipal liability, Plaintiff must assert in her complaint facts that indicate that "the [official] (1). . . failed to train or supervise the officers involved; (2) there is a causal connection between the alleged failure to supervise or train and the alleged violation of the plaintiff's rights; and (3) the failure to train or supervise constituted deliberate indifference to the plaintiff's constitutional rights." *Peña*, 879 F.3d at 623 (citing *Thompson v. Upshur County, Tex.*, 245 F.3d 447, 459 (5th Cir. 2001)). Defendants argue that Plaintiff has not only not mentioned what, if anything, is inadequate in the EFSPO and Town of Clinton's training, but also has not pled how the lack of training was causally connected to Decedent's death, or how the failure to train constituted deliberate indifference to Decedent's constitutional rights. (Doc. 29-1, p. 18); (Doc. 38, p. 3).

Plaintiff has alleged that neither EFPSO nor the Town of Clinton Police Department had "a deadly use of force policy in place at all relevant times." (Doc. 1, p. 6). In addition, Plaintiff asserts that officers—specifically Wilson—who were members of Delta Narcotic Task Force are "given more latitude from the EFPSO

14

when it comes to the use of force (deadly or otherwise) than other officers," and that "[o]fficers who are a part of 'Delta Narcotic Task Force' have had numerous complaints of excessive force lodged against them and are rarely if ever disciplined or complaints forwarded to the District Attorney for criminal prosecution." (*Id.*).

The Supreme Court in *City of Canton, Ohio v. Harris*, 489 U.S. 378, 390 n. 10, considered this exact scenario where a general lack of policy or training could constitute deliberate indifference to an individual's constitutional rights. In a footnote, the Supreme Court noted:

> [C]ity policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons. The city has armed its officers with firearms, in part to allow them to accomplish this task. Thus, the need to train officers in the constitutional limitations on the use of deadly force, *see Tennessee v. Garner*, 471 U.S. 1, 105 S.Ct. 1694, 85 L. Ed. 2d 1 (1985), can be said to be "so obvious," that failure to do so could properly be characterized as "deliberate indifference" to constitutional rights.
>
> It could also be that the police, in exercising their discretion, so often violate constitutional rights that the need for further training must have been plainly obvious to the city policymakers, who, nevertheless, are "deliberately indifferent" to the need.

*Id.*

Taking the facts as pled in the light most favorable to Plaintiff, Plaintiff has properly alleged that EFPSO and the Town of Clinton have no use of force policy and do not train their officers in use of force, or discipline them when excessive force is used. Thus, the Court concludes that Plaintiff's claim of municipal liability under a failure to train theory is sufficiently pled.

### v. Plaintiff's State Law Claims

Plaintiff has alleged four state law claims: excessive force, assault, battery, and negligence. "Under Louisiana law, the torts of assault and battery, when raised against a law enforcement officers acting in the course of employment, require a showing that the law enforcement officer acted with unreasonable or excessive force." *Elphage v. Gautreaux*, 969 F. Supp. 2d 493, 515 (M.D. La. 2013) (citing *Gerard v. Parish of Jefferson*, 424 So. 2d 440, 444 (La. Ct. App. 1982)). The Fifth Circuit has held that "Louisiana's excessive force tort mirrors its federal constitutional counterpart." *Id.* at 515 (citing *Deville v. Marcantel*, 567 F.3d 156, 172–73 (5th Cir. 2009)). As such, the foregoing analysis of Plaintiff's § 1983 excessive force claims apply equally to the state law excessive force, assault, and battery claims.

To establish negligence under Louisiana law, courts apply a four-prong inquiry:

> I. Was the conduct in question a substantial factor in bringing about the harm to the plaintiff, *i.e.*, was it a cause-in-fact of the harm which occurred?
>
> II. Did the defendant owe a duty to the plaintiff?
>
> III. Was the duty breached?
>
> IV. Was the risk, and harm caused, within the scope of protection afforded by the duty breached?

*Roberts v. Benoit*, 605 So. 2d 1032, 1041 (La. 1991), *on reh'g* (May 28, 1992)

Regarding the negligence claims, under Louisiana law, a police officer has a duty to act reasonably under the totality of the circumstances. *Mathieu v. Imperial Toy Corp.*, 94-0952, p. 10 (La. 11/30/94); 646 So. 2d 318, 325. Given that Plaintiff has

pleaded facts that indicate that Deputy Wilson and Officer Baudoin did not act reasonably under the circumstances, Plaintiff has adequately stated a claim upon which relief can be granted for all state law claims.

Under Louisiana law, an employer is vicariously liable for the torts of its employees that are committed in the course of their employment. *See* LA. CIV. CODE ANN. art. 2320. It is not disputed that Wilson and Baudoin were in the course of their employment for the EFPSO and the Town of Clinton respectively when they shot Decedent. Because Plaintiff has pleaded facts which, if true, would constitute a tort, the state law claims against Travis and the Town of Clinton also survive the motion to dismiss.

## IV. CONCLUSION

Considering the foregoing analysis, Defendants' Motions are granted in part and denied in part.

Rule 15(a) provides that "[t]he court should freely give leave [to amend pleadings] when justice so requires." FED. R. CIV. P. 15(a)(2). The Fifth Circuit has held that "[g]ranting leave to amend is especially appropriate . . . when the trial court has dismissed the complaint for failure to state a claim." *Griggs v. Hinds Junior College*, 563 F.2d 179, 180 (5th Cir. 1977). The instant Motions were all filed before any responsive pleadings in the matter, and there is no scheduling order in place. As such, no undue prejudice to the Defendants will follow by allowing Plaintiff limited leave to amend her complaint to address the deficiencies outlined in this Order.

Accordingly,

**IT IS ORDERED** that Defendants Motions (Doc. 28, 29, 35) are **GRANTED IN PART.**

Defendants' Motions to Dismiss Plaintiff's claims against Cullen Wilson and Lori Bell, in their official capacity, as well the Board of Aldermen, are **GRANTED**. Plaintiff's Claims against Wilson and Bell in their official capacity, and against the Board of Aldermen are **DISMISSED WITH PREJUDICE**.

Defendants' Motions to Dismiss Plaintiff's *Monell* liability claims, as it relates to the *Monell* official policy claims are **GRANTED**. These *Monell* claims against Defendants are **DISMISSED WITHOUT PREJUDICE**.

In all other respects, Defendants' Motions (Doc. 28, 29, 35) are **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff is **GRANTED LEAVE** to file, within thirty (30) days of this Order, a revised amended complaint, addressing the deficiencies explained in this Order.

Baton Rouge, Louisiana, this 29th day of March, 2021

_____
**JUDGE BRIAN A. JACKSON**
**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF LOUISIANA**